IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| RICHARD DAVIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )   CIVIL ACTION 1:05cv187(JCC) |
| GLOBALPHONE CORP., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on motion of the defendants, Globalphone Corporation and Greg Hoagland, for summary judgment pursuant to Fed. R. Civ. P. 56(c).  For the following reasons, the Court will deny the defendants' motion as to plaintiff Lui and grant the defendants' motion as to plaintiff Davis.

**I.  Facts**

The plaintiffs, Richard Davis and Lyly Lui, are former employees of defendant GlobalPhone Corporation ("GlobalPhone"). Lui was hired by GlobalPhone on August 27, 2001 as a Sales Representative.  Lui's immediate supervisor at all pertinent times was GlobalPhone's Director of Sales, defendant Greg Hoagland.  Hoagland, in turn, reported directly to Stephen McCarthy, GlobalPhone's president, and Guy Jazynka, GlobalPhone's vice-president.  On November 21, 2001, GlobalPhone hired co-plaintiff Davis as its Director of Marketing.

During the relevant time period, GlobalPhone employees exchanged numerous emails containing jokes of a sexual nature. Lui and Davis were each recipients of some of these emails. According to the plaintiffs, Hoagland then began to speak to Lui in a sexually degrading manner during the spring of 2002. The plaintiffs claim that during this period they each lodged separate verbal complaints with McCarthy and Jazynka regarding Hoagland's treatment of Lui. On April 16, 2002, Lui received a Notice of Unsatisfactory Performance and was placed on a sixty-day probation. She was told at this time that she needed to reach certain sales targets in order to remain employed by GlobalPhone.

Meanwhile, McCarthy fired Davis on June 12, 2002, citing Davis's absenteeism and insubordination. On June 14, 2002, at the end of Lui's sixty-day probation period, GlobalPhone terminated her employment, citing her failure to improve her sales numbers during the probation period. Lui claims that Hoagland sexually harassed her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Lui and Davis both claim that their terminations were unlawful under Title VII, as acts of retaliation for their complaints with GlobalPhone management regarding Hoagland's alleged sexual harassment of Lui. The defendants have moved for summary judgment against both plaintiffs.

## II.  Standard of Review

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party.  *See id.*  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict.  *See id.*  As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party

>has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

### III.  Analysis

A.  Lui's Sexual Harassment Claim

Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal citation omitted).  To establish sexual harassment amounting to a hostile work environment, a plaintiff must prove: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000).

In their motion for summary judgment, the defendants argue that undisputed facts refute the existence of each of the four elements required for a sexual harassment claim.  First, they contend that there was no unwelcome conduct.  According to the defendants, Lui participated in the intraoffice email

exchange of sexual humor, publicly referred to co-plaintiff Davis with a derogatory sexual name and welcomed his in kind response, interacted with her coworkers and dressed in a provocative manner, and had a well-established friendship with defendant Hoagland in which sexual banter was welcome.

Lui concedes that she received emails containing sexual humor from her friends and that she forwarded one email containing a particularly sexually explicit image to Hoagland. She contends, however, that this occurred only because Hoagland adamantly insisted that she forward the email to him after witnessing her open it.  (Lui Dep. 238-29).  Hoagland then forwarded the email to McCarthy with the comment: "This is the best one EVER!"  (Lui Resp., Attach. D.)  Lui also concedes that she occasionally used coarse language with Davis, but both she and Davis contend that they never did so in public.  (Davis Aff. ¶ 4.)  Finally, although Lui concedes that she interacted with coworkers and dressed in a flirtatious manner, she disputes the defendants' contention that she had an existing friendship with Hoagland.  (Lui Dep. 60-61, 89-90.)

In light of the foregoing allegations, the Court will find that there are disputed issues of fact as to whether the alleged conduct was welcomed by Lui.  Although the defendants rely on *Hartsell v. Duplex Prods.*, 123 F.3d 766, 774 n.7 (4th Cir. 1997), for the proposition that participation in office

banter raises an issue as to whether alleged sexual harassment was welcomed conduct, it is also clear that *Hartsell* involved conduct of a less egregious nature than that alleged by Lui. *Id.* at 768-69.  In addition to allegedly offensive emails, Lui has also testified in her deposition that Hoagland slapped her on the buttocks on one occasion (Lui Dep. 223), showed a picture of a topless Asian woman to others while commenting that Lui was moonlighting as a stripper (Lui Dep. 154-55), and distributed a picture of an Asian woman engaging in oral sex while commenting that the woman was Lui.  (Lui Dep. 187-89; Lui Aff.)  The Fourth Circuit has explained that a "Plaintiff's use of foul language or sexual innuendo in a consensual setting does not waive her legal protections against sexual harassment." *Swentek v. USAir, Inc.*, 830 F.2d 552, 557 (4th Cir. 1987).  Lui's allegations raise a triable issue of fact as to whether Hoagland's conduct was welcome.

Secondly, the defendants contend that because the allegedly offensive emails were sent to all employees, Lui cannot prove that the conduct was based on Lui's sex.  The Court disagrees.  Lui's allegations raise a triable issue of fact as to whether Hoagland engaged in the more egregious conduct detailed in the above paragraph.  According to the Fourth Circuit, "[a] trier of fact may reasonably find discrimination . . . when a female victim is harassed in such sex-specific and derogatory

terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331-32 (4th Cir.) (en banc) (internal citation omitted). Lui's allegations, if taken as true, establish that Hoagland referred to her in a derogatory and sex-specific manner.

Thirdly, the defendants contend that the alleged sexual harassment was not so severe or pervasive as would alter the plaintiff's conditions of employment or create an abusive work environment. The defendants argue that Lui showed no signs of working in an abusive environment, relying on evidence showing that during the relevant time period, Lui freely sent emails inside and outside of the GlobalPhone office and planned social activities. On the other hand, co-plaintiff Davis testified that Lui became upset and cried over Hoagland's purported use of the pornographic pictures to derogate Lui. This incident, along with the nature of the conduct alleged and sworn to by Lui, creates a triable issue as to the severity of the conduct.

As for pervasiveness, Jazynka, in an email to Hoagland, expressed his concern over GlobalPhone's potential exposure to a sexual harassment complaint due to the office environment. In explaining his concern, Jazynka stated, "[t]hings get very ronchy [sic] around here to say the least. Between all the emails, off handed jokes and comments we do enough to keep any HR department

busy for a month." (Lui Resp. Attach. G.) This acknowledgment, along with the frequency of the emails and other instances of conduct alleged by Lui, create a triable issue as to the pervasiveness of the alleged sexual harassment. The Court notes that in *Ocheltree*, the Fourth Circuit held that male coworkers' frequent use of a mannequin in a sexual manner, use of a demeaning song, display of a vulgar picture, and graphic descriptions of their sexual encounters accounted to severe and pervasive sexual harassment. 335 F.3d at 332. If true, the conduct to which Lui has testified is equally severe and pervasive as that found sufficient by the Fourth Circuit in *Ocheltree*.

Finally, the defendants argue that the alleged misconduct is not imputable to GlobalPhone. Under the fourth element of a Title VII sexual harassment claim, "the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 333-34. Again, the evidence submitted is sufficient to raise a triable issue of fact as to the knowledge of GlobalPhone's senior management. The parties have submitted many of the allegedly offensive emails, and it is clear that McCarthy and Jazynka received at least several of these emails. There was also evidence that Helen Frassman, the GlobalPhone Human Resources Director, was aware of the frequent sexual jokes

that took place in the GlobalPhone workplace.  (Frassman Dep. 75-77, 81.)  Finally, in the above-cited email conversation between Hoagland and Jazynka, Jazynka himself acknowledged the raunchiness of the office environment and the possibility of a sexual harassment complaint being filed against GlobalPhone. (Lui Resp. Attach. G.)  Based on this evidence, the Court finds the existence of a genuine dispute of material fact as to GlobalPhone management's knowledge of Hoagland's conduct.[1]

The defendants have failed to demonstrate that there are no genuine disputes of material fact with respect to the elements of a sexual harassment claim under Title VII.  Accordingly, the Court will deny their motion for summary judgment on Lui's sexual harassment claim.

B.  Lui's Retaliation Claim

To state a prima facie case for retaliation, a plaintiff must show that: 1) he engaged in a protected activity; 2) the employer took an adverse action against him; and 3) a causal connection existed between the protected activity and the

---

[1] The defendants also claim that the alleged sexual harassment was not imputable to GlobalPhone because of an affirmative defense to liability spelled out by the Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  However, this affirmative defense is only available "[w]hen no tangible employment action is taken . . . ." *See id.*  The Fourth Circuit has further explained that "[t]angible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense." *Lissau v. S. Food Serv.*, 159 F.3d 177, 182 (4th Cir. 1998).  As will be discussed in the next section, Lui has presented sufficient evidence, to overcome this summary judgment motion, that her termination was effected for retaliatory reasons. This affirmative defense is therefore currently unavailable to the defendants.

claimed adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001). After the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the action, under the oft-cited *McDonnell Douglas* analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). If the employer does so, the plaintiff must demonstrate that the employer's proffered reasons are pretextual. *Price*, 380 F.3d at 212.

The defendants do not raise any arguments as to the second and third elements of Lui's prima facie case, but contend that Lui never engaged in a protected activity. Lui, on the other hand, testified in her deposition that she had two meetings with McCarthy in the spring of 2002, in which she complained of Hoagland's inappropriate emails to her, Hoagland's slapping her on the buttocks, and various other comments made to her by Hoagland. (Lui Dep. 200.) Lui's testimony, if true, indicated that she subjectively believed that she had been sexually harassed and that her belief was objectively reasonable under the circumstances. *See Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) ("[T]o show protected activity, the plaintiff in a Title VII retaliation case need . . . only prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring."). Lui's testimony thus raises a

-10-

triable issue of fact as to whether she engaged in protected activity.  *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (holding that "informal protests, such as voicing complaints to employers" constitutes protected activity).

Accordingly, under the *McDonnell Douglas* framework, the burden would shift to the defendants to articulate a legitimate, non-retaliatory reason for Lui's termination.  The defendants claim that Lui was absent from work without authorization on April 12, 2002, and that she falsely told McCarthy that Hoagland had given her the day off.  Lui disputes this contention, however, claiming that Hoagland and McCarthy each verbally approved her request for leave.  (Lui Dep. 134-35.)  Triable issues of fact therefore exist as to Lui's authorization for her April 12, 2002 absence and the truthfulness of Lui's statement to McCarthy.  The defendants also cite Lui's inability to meet her sales quotas.  According to the Fourth Circuit, "an employer is free to set its own performance standards, provided such standards are not a 'mask' for discrimination."  *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).  Thus, Lui's failure to meet sales quotas would constitute a legitimate, non-retaliatory reason for her termination.

There is some evidence, however, that this asserted reason for Lui's termination was merely pretextual.  "In appropriate circumstances, the trier of fact can reasonably infer

from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Lui has submitted a series of emails showing that on the morning of April 16, 2002, Hoagland, McCarthy, and Jazynka decided to terminate her. (Lui Resp. Attach. P, R.) During the course of this discussion, Jazynka advocated delaying Lui's termination to give GlobalPhone time to hire a replacement. (Lui Resp. Attach. P.) After circulating a letter of termination to McCarthy and Jazynka (Lui Resp. Attach. Q.), Hoagland then informed Lui that GlobalPhone was placing her on a sixty-day probationary period, during which time she was required to increase sales by thirty percent. (Lui Resp. Attach. S.) Three days later, Hoagland, McCarthy, and Jazynka made the decision to interview Lui's eventual replacement. (Lui Resp. Attach. T.) On June 14, 2002, GlobalPhone terminated Lui, purportedly for failing to reach her sales targets during her probationary period.

Thus, there is evidence suggesting that GlobalPhone's management made the decision to terminate Lui on April 16, 2002, told Lui that she was on probationary status only to give GlobalPhone time to find a replacement, and ultimately terminated Lui without considering the stated reason for her probationary status. According to the Supreme Court, "once the employer's justification has been eliminated, [retaliation] may well be the

most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147. The evidence submitted is sufficient to create a triable issue of fact as to the whether Lui's failure to meet sales quotas was a pretextual reason for her termination.

Lui has sworn to facts that, if true, would establish a prima facie case of retaliation. While the defendants have asserted a legitimate, non-retaliatory reason for Lui's termination, there is at least some evidence to indicate that this reason was pretextual. Accordingly, the Court will find that summary judgment on Lui's retaliation claim is inappropriate.

C.  Davis's Retaliation Claim

In their motion for summary judgment against co-plaintiff Davis, the defendants argue that Davis also failed to set forth a prima facie case that he was discharged for retaliatory reasons. The defendants contend that Davis never lodged a complaint with GlobalPhone management about any alleged sexual harassment. The Court agrees. Once a party moving for summary judgment demonstrates the basis of its motion to the court, "the non-moving party 'may not rest upon the mere allegations or denials of' its pleading; rather, the non-moving party must, by citing its own affidavits or referring to

'depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Barnett v. Technology Int'l, Inc.*, 1 F. Supp. 2d 572, 575 (E.D. Va. 1998) (quoting *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

Davis, in his deposition, testified that he met with McCarthy on three occasions and voiced his concerns about Hoagland's conduct. (Davis Dep. 60-64, 258-59.) Davis claims that the last of these meetings occurred three weeks prior to his termination. According to Davis's testimony, however, the subject of these meetings revolved around Davis's irritation at Hoagland's frequent interruptions of his work. Davis complained about the volume of Hoagland's emails and told McCarthy that the emails were unprofessional in their subjects and counterproductive in their frequency. Davis has provided no sworn statement asserting that he raised an issue during these meetings as to whether Hoagland's conduct constituted sexual harassment or any other practice prohibited by law.

The Fourth Circuit has explained that "to show protected activity, the plaintiff in a Title VII retaliation case need . . . only prove *that he opposed an unlawful employment practice* which he reasonably believed had occurred or was occurring." *Peters*, 327 F.3d at 320 (emphasis added) (internal quotation and citation omitted). Where a complaint merely

concerns conduct not prohibited by Title VII, such is not "protected activity." *See Balazs v. Liebenthal*, 32 F.3d 151, 159-60 (4th Cir. 1994). A complaint that frequent emails of an offensive subject matter are "counterproductive" simply is not cognizable under Title VII, absent a further complaint that such emails constituted sexual harassment. There being none here, Davis has failed to establish his prima facie case.

Even if Davis's evidence were sufficient to create disputed issues of fact as to his prima facie case, the defendants have set forth a legitimate, non-retaliatory reason for Davis's termination. According to the defendants, Davis was absent from work on June 11, 2002 and unreachable by telephone. McCarthy testified in his deposition that he confronted Davis the following day about this absence and that Davis began to argue with him. (McCarthy Dep. 123-24.) McCarthy then fired Davis "on the spot," citing Davis's absenteeism and insubordination. (McCarthy Dep. 124.) According to the Fourth Circuit, "the discharge of an employee on attendance, if properly established, is sufficient to rebut an inference of discrimination and shift the burden of production to the plaintiff in a disparate treatment case." *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, 756 (4th Cir. 1986). Davis has disputed neither his June 11, 2002 absence nor his June 12, 2002 argument with McCarthy. He disputes only that the subject of the argument was his

absenteeism.  As such, the defendants have sufficiently established a legitimate, non-retaliatory reason for Davis's termination, shifting the burden of production to Davis.  Davis has failed to demonstrate any facts suggesting that his absenteeism and insubordination were pretextual reasons for his termination.  Due to the lack of such evidence, as well as Davis's failure to establish his prima facie case, the Court finds that summary judgment against Davis is appropriate.

### IV.  Conclusion

      For the foregoing reasons, the Court will deny the defendants' Motion for Summary Judgment Against Plaintiff Lyly Lui, and grant the defendants' Motion for Summary Judgment Against Plaintiff Richard Davis.  An appropriate Order shall issue.

October 19, 2005　　　　　　　　_____/s/_____
Alexandria, Virginia　　　　　　　　James C. Cacheris
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT JUDGE